FILED Rec'd
IN CLERK'S OFFICE 3/27/12
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 26 2012 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
JAMES LA SCALIA, JR., and
JOANNE LA SCALIA,

                Plaintiffs,

-against-

TIMOTHY S. DRISCOLL,

                Defendant.
----------------------------------------------------------x

**MEMORANDUM AND ORDER**

10-CV-5007 (SLT) (CLP)

**TOWNES, United States District Judge:**

    Plaintiffs James La Scalia, Jr., and Joanne La Scalia (collectively, "Plaintiffs"), proceeding *pro se*, bring this civil rights action against defendant Timothy S. Driscoll, a Justice of the Supreme Court of the State of New York, Nassau County ("Defendant"), seeking declaratory, injunctive and other equitable relief in connection with Defendant's handling of a state-court action involving Plaintiffs. Defendant now moves to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing, among other things, that this action is barred by absolute judicial immunity and the *Rooker-Feldman* doctrine and that Plaintiffs' complaint fails to state a claim under 42 U.S.C. §1983 or §1985. For the reasons set forth below, Defendant's motion is granted and this action is dismissed.

### BACKGROUND

    Unless otherwise specified, the following facts are drawn from the "Federal Complaint" filed by Plaintiffs on October 29, 2010 (the "Complaint") and the exhibits thereto. In 2007, I & T Petroleum, Inc., and Indrajeet Thakurdeen (collectively, the "State Plaintiffs") sued Plaintiffs and a co-defendant, Delta Property Leasing Corp. (collectively, the "State Defendants"), in the Supreme Court of the State of New York, Nassau County. Although the complaint does not set

forth the details of this state-court litigation, exhibits attached to the complaint indicate that the State Plaintiffs claimed that the State Defendants breached a provision in a lease which allegedly obligated Plaintiffs to replace underground gasoline storage tanks (Complaint, Ex. B [Doc. 1-3, p. 4 of 39]).[1]

In 2008, the parties to the state-court action entered into a Preliminary Conference Stipulation (the "Stipulation"), which set forth a schedule for the completion of discovery in that case (*id.*, Ex. C [Doc. 1-3, pp. 7-12 of 39]). This Stipulation provided, among other things, that certain depositions would be held on December 11, 2008; that discovery (except for expert disclosures) would be completed by February 27, 2009; that dispositive motions would be made on or before May 1, 2009; and that the parties would provide expert disclosure during the Summer of 2009 (*id.*). However, the Stipulation also provided for a pre-trial conference on September 17, 2008; for jury selection to commence that same day, and for trial to start on September 21, 2008 (*id.*). Although these September 2008 dates were clearly erroneous, Justice Leonard B. Austin "so ordered" the Stipulation on September 11, 2008 (*id.*).

Sometime thereafter, the Stipulation was altered to change the year on which the pre-trial conference, jury selection, and trial would take place. According to Plaintiffs, someone used "white out" to change the last digit of the date for these three events, replacing the "8" in 2008 with a "9" (Complaint at ¶8). In the Complaint, Plaintiffs allege that Defendant made these alterations (*id.*). However, according to a handwritten notation on page 5 of Exhibit D to the

---

[1] Since some of the exhibits submitted with, and referenced in, the Complaint are not paginated, this Court will provide the document and page numbers that appear on the Court's Electronic Case Filing System.

Complaint, these changes were made by an "unknown individual" (*id.*, Ex. D at 5 [Doc. 1-3, p. 17 of 39]).

At some point prior to trial, the state-court action was re-assigned to Defendant, who conducted a pre-trial conference on September 17, 2009 (Complaint at ¶5). Although Defendant knew that Plaintiffs wanted to be present at each and every proceeding relating to the case, Defendant did not make sure that Plaintiffs – who were then represented by the Law Firm of Robert Del Col ("Counsel") – were aware of this conference (*id.*). It is unclear precisely what occurred at this conference. A memorandum attached as Exhibit R to the Complaint suggests that this was a certification conference at which counsel for both parties certified that all discovery and pre-trial motions were complete, that the case could not be settled and that they were ready to commence jury selection (*id.*, Ex. R [Doc. 1-5, p. 1 of 14]). However, the Complaint implies that Defendant also made evidentiary rulings, alleging that Defendant "certificated the evidence that was presented in the state court trial" (*id.* at ¶5).

The Complaint alleges that some of the evidence introduced by the State Plaintiffs at the subsequent trial was "fraudulent and fabricated" (*id.* at ¶6). According to Plaintiffs, Defendant knew this evidence – which included "checks, business invoices, [and] mainfests" (*id.*), a "governmental document called a Nassau County Fire Marshal Tank Registration" (*id.* at ¶15) (emphasis omitted), and a "Master Lease" (*id.* at ¶16) (emphasis omitted) – to be fraudulent, but admitted it nonetheless (*id.* at ¶15). As a result, the jury returned a verdict awarding the State Plaintiffs "hundreds of thousands of dollars," even though "no such losses existed" (*id.* at ¶10).

Following the trial, Plaintiffs asked Defendant to order Counsel to give them copies of legal papers relating to the case so that Plaintiffs could represent themselves on appeal. On

3

October 15, 2009, Defendant denied that request (*id.* at ¶20). However, there is nothing to suggest that Plaintiffs asked that Counsel be relieved, and Counsel continued to represent Plaintiffs. On October 20, 2009, Defendant granted Plaintiffs "some 55 days" to file a post-trial motion to set aside the verdict, even though Plaintiffs contend that New York law requires that such a motion be filed within 15 days after the verdict (*id.* at ¶19).

In December 2009, Counsel moved by order to show cause for permission to withdraw from the case. Counsel's order to show cause was signed by Justice Arthur M. Diamond on December 11, 2009 (*id.* at ¶21). Justice Diamond's order – copies of which are attached as Exhibits M, N and P to the Complaint – placed the matter on Defendant's calendar for January 19, 2010, and directed Counsel to serve Plaintiffs with a copy of the executed order by overnight mail on or before December 18, 2009. That order also included a paragraph staying the action pending the determination of the motion. Justice Diamond advised Mr. La Scalia, who appeared before Justice Diamond on the date the order was signed, that in light of this stay, Plaintiffs did not have to appear for a conference which had previously been scheduled to take place before Defendant on December 15, 2009 (*id.*, Ex. O [Doc. 1-4, pp. 27-28 of 35]).

Notwithstanding Justice Diamond's order and assurances that the December 15, 2009, conference would not be held, Defendant held a conference "behind close[d] doors" with Counsel on or about that date (*id.* at ¶25). At that conference, Defendant allegedly altered Justice Diamond's order by crossing out the paragraph that provided for a stay and changing the date for the hearing on Counsel's application from January 19 to January 25, 2010 (*id.* at ¶¶22, 25). Plaintiff's were not informed of the change in dates until they appeared in court on January 19, 2009 (*id.* at ¶26), and did not learn about the elimination of the stay until January 25, 2010, when

4

Defendant "confessed in open court that he had . . . crossed out the Stay portion of . . . [Justice] Diamond's Order . . ." (*id.*).

Oral argument on Counsel's application was scheduled for February 25, 2010. However, Counsel did not appear in court on that date, but were permitted to appear telephonically (*id.* at ¶28). It is unclear whether Mr. Del Col was available to appear in person. By the time of the oral argument, Mr. Del Col had been indicted for grand larceny in the second degree in connection with an allegation that he stole $500,000 from a bank (*id.* at ¶30). Indeed, an arrest warrant for Mr. Del Col, dated February 9, 2010, is attached to Complaint as Exhibit S (*id.*, Ex. S [Doc. 1-5, p. 2 of 14]).

On May 28, 2010, Defendant granted Counsel's application. Although the Complaint attaches only the first and last pages of Defendant's 10-page opinion, these excerpts suggest that Defendant simultaneously denied Plaintiffs' cross-motion for an order 1) "to direct . . . Counsel to return all monies received for litigation in connection with their representation of [Plaintiffs] . . .; 2) to refer this matter to the New York State disciplinary committee, and sanctioning and censuring . . . Counsel; 3) to restrain [the other parties] . . . from taking further action in [the] case; and 4) to direct . . . Counsel to return all records related to [the] case" (*id.*, Ex. V. [Doc. 1-5, p. 12 of 14]). Defendant wrote:

> [T]he Court has found Mr. Del Col and his Firm to be professional and capable advocates and declines to make any referral regarding, or impose any sanctions against, Mr. Del Col and his Firm. Moreover, Defendants [Plaintiffs herein] have not demonstrated the appropriateness of an Order directing Mr. Del Col to return all monies received for litigation, or to return all records related to this case. Should Defendants wish to pursue a claim against Mr. Del Col and his Firm for their allegedly inadequate representation of Defendants, they may do so via avenues better suited for such claims, such as the filing of a claim with the Grievance Committee (*id.*, bracketed material added).

*Plaintiffs' Complaint*

On October 29, 2010, Plaintiffs commenced this action pursuant to 42 U.S.C. §§1983 and 1985, alleging that Defendant's actions violated Plaintiffs' First, Fourth, Fifth, Seventh, Eighth, Ninth, Tenth, and Fourteenth Amendment rights. As evidenced by the preceding paragraphs, the Complaint and exhibits set forth a detailed description of what occurred during the state-court proceedings. However, the Complaint does not explain how some of Defendant's actions violated Plaintiffs' Constitutional rights. For example, the Complaint assumes that Defendant had a "judicial responsibility and duty" to ensure that the represented Plaintiffs were aware of the date of the pre-trial conference, even though Plaintiffs were represented by counsel (*id.* at ¶5), and a Constitutional duty to ensure that the various depositions listed in the Stipulation took place (*id.* at ¶7); to spin the drum holding the prospective jurors names before selecting a venire (*id.* at ¶9); and to exclude a "study . . . that was "not a part of the discovery process" (*id.* at ¶18).

While the Complaint does not allege the violation of any federal statutes, it alleges or implies that some of Defendant's acts violated state laws and ethical rules. For example, the Complaint alleges that Defendant "did not comply [with] New York State law governing the rules of evidence" when he admitted the allegedly "fraudulent and fabricated" documents into evidence (*id.* at ¶6), committed "fraud" when he admitted the Master Lease into evidence (*id.* at ¶17); violated section 4404 of the New York Civil Practice Laws and Rules by giving Plaintiffs more than 15 days in which to file a motion to set aside the verdict (*id.* at ¶19); violated New York State law and ethical rules by failing to order Counsel to provide Plaintiffs with copies of legal papers pertaining to the case (*id.* at ¶20); committed "forgery and fraud" by altering Justice Diamond's December 11, 2009, order (*id.* at ¶22); ignored provisions of "New York State

statutory law" which required that an "automatic default" be entered against Counsel when they failed to appear in person at the February 25, 2010, hearing on their motion to withdraw, and which prohibited Defendant from permitting Counsel to appear telephonically (*id.* at ¶28) and "violated New York State law . . . by . . . hiding from the Plaintiffs and state court the fact that [Counsel was] . . . under criminal indictment . . ." (*id.* at ¶30).

The Complaint also alleges that Defendant engaged in various conspiracies relating to the state-court action. For example, the Complaint alleges that Defendant "conspired with the Plaintiffs['] adversaries . . . to let . . . false and bogus and fraudulent evidence . . . be used against the Plaintiffs . . ." (*id.* at ¶11; *see also id.* at ¶¶14, 15). In addition, the Complaint alleges that Defendant conspired with Counsel to conduct a secret conference on December 16, 2009 (*id.* at ¶25) and to violate Plaintiffs' rights in other respects (*id.* at ¶31).

The Complaint does not seek money damages. Rather, the Complaint states that Plaintiffs seek a declaratory judgment on all of Plaintiffs' claims against Defendant and unspecified "equitable relief." The final paragraph of the Complaint – entitled "Relief Requested by Plaintiffs" – states that Plaintiffs are seeking (1) to prevent "Defendant's rulings, decisions, and orders, from taking effect until Plaintiffs have a jury trial on all issues" raised in the Complaint, (2) to "completely reverse[]" these rulings, decisions, and orders; and (3) to impeach Defendant "for violating his oath of office to uphold the U.S. Constitution and the N.Y.S Constitution and all the laws of the United States and for deprivations of the Plaintiffs['] rights pursuant to [42 U.S.C. §1983] . . ." (*id.* at pp. 28-29).

*Defendant's Motion*

Defendant now moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b), advancing five arguments. First, citing to *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), Defendant argues that Plaintiffs' claims are too conclusory and implausible to state a claim. Second, Defendant contends that Plaintiffs lack standing to bring this action.

Defendant's third argument contains three distinct theories. First, Defendant argues that "[t]o the extent that the plaintiffs are seeking any sort of damages," their claims are barred by the Eleventh Amendment of the United States Constitution (Memorandum of Law on Behalf of Justice Timothy S. Driscoll in Support of his Motion to Dismiss the Complaint ["Defendant's Memo"] at 8). Second, Defendant argues that the "doctrine of absolute judicial immunity" precludes Defendant from being "monetarily liable for acts done in the exercise of a judicial function" (*id.*). Third, Defendant asserts that the Federal Court Improvement Act of 1996, which amended 42 U.S.C. §1983, precludes this Court from granting the injunctive relief Plaintiffs seek.

Defendant's fourth argument invokes the *Rooker-Feldman* doctrine in arguing that this Court lacks jurisdiction to reverse or modify state-court judgments. Finally, Defendant's fifth claim asserts that Plaintiffs have failed to state a claim under either 42 U.S.C. §1983 or §1985.

Plaintiffs have not responded to Defendant's motion. In correspondence received by this Court in 2011, Plaintiffs complained that Defendant had not served them with a copy of the motion. However, in a Memorandum and Order dated April 29, 2011, and filed May 2, 2011 (the "May 2 M&O"), this Court concluded that "[D]efendant's counsel's efforts to serve

8

Plaintiffs with the motion papers" were adequate. May 2 M&O at 5. The May 2 M&O set a May 30, 2011, deadline for Plaintiffs' response(s) to Defendant's motion.

The Court did not receive a response by that deadline. Instead, Plaintiffs sent additional correspondence alleging that they had not been served with copies of the motion. Accordingly, on June 14, 2011, this Court issued another Memorandum and Order (the "June 14 M&O"), in which it concluded:

> [I]t appears that Plaintiffs have deliberately chosen not to access the motion papers or to respond to defendant's motion. They have thwarted service, either by refusing to accept copies of the motion papers or by failing to provide addresses to which mail can be sent. Moreover, their failure to respond is not due to lack of ability, for Mr. La Scalia has filed more than 20 pages of highly articulate, but non-responsive, submissions since May 31, 2011. Although this Court is aware that Plaintiffs are proceeding *pro se*, a *sua sponte* order directing defendant to serve Plaintiffs with yet another copy of his motion papers, further extending Plaintiffs' time to answer the motion, or convening a conference would be futile under these circumstances.

(June 14 M&O at 4). Notwithstanding the foregoing, this Court stated that it would "consider Plaintiffs' response(s) to the motion to dismiss if the response [was] received by this Court before this Court renders a decision on the motion to dismiss and, in any event, no later than June 30, 2011" (*Id.* at 4-5). This Court received nothing from Plaintiffs subsequent to the June 14 M&O, apart from a letter dated June 22, 2011, alleging once again that Plaintiffs had not received a copy of the motion and asking for yet another extension.

## DISCUSSION

### *Standard of Review*

In considering a motion to dismiss pursuant to Rule 12(b), a court must accept all of the factual allegations in the complaint as true and must draw all reasonable inferences in the plaintiff's favor. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Ofori-Tenkorang v. Am. Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006). A court must then determine whether a plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Because "a Rule 12(b)(6) motion challenges the facts alleged on the face of the complaint . . . or, more accurately, the sufficiency of the statements in the complaint," *see Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (internal citations omitted), a court deciding such a motion "is normally required to look only to the allegations on the face of the complaint." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). However, in some circumstances, a court may consider documents other than the complaint. For example, "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Id.* (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998)). In addition, a document which is not attached to, or incorporated by reference in, the complaint may be considered if the complaint "solely relies" on the document and it is "integral to the complaint." *Id.* (quoting *Cortec Indus.*, 949 F.2d at 47) (emphasis omitted). If "matters outside the pleading are presented to and not excluded by the court," a court should convert the motion to one for summary judgment and give "all parties . . . [a]

reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b).

"[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). A court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999).

*Judicial Immunity*

This Court need not address Defendant's first two arguments because Defendant's third, fourth and fifth arguments are dispositive of this matter. First, the doctrine of judicial immunity doctrine, invoked in Defendant's third argument, "protects judges from civil actions even when they perform judicial acts in excess of their authority, even when such acts are allegedly done maliciously or corruptly." *Maestri v. Jutkofsky*, 860 F.2d 50, 52 (2d Cir. 1988). This doctrine stems from a recognition that "[i]mposing . . . a burden [of exposure to liability] on judges would contribute not to principled and fearless decisionmaking but to intimidation." *Pierson v. Ray*, 386 U.S. 547, 554 (1967). While this judicially created immunity unquestionably advantages judges themselves, it also benefits the public interest in having a judiciary "at liberty to exercise

their functions with independence and without fear of consequences." *Huminski v. Corsones*, 396 F.3d 53, 75 (2d Cir. 2004) (quoting *Pierson*, 386 U.S. at 554).

Judicial immunity is "immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "[I]f the relevant action is judicial in nature, the judge is immune so long as [the action] was not taken in the complete absence of jurisdiction." *Huminski v. Corsones*, 396 F.3d 53, 75 (2d Cir. 2004)(citing *Mireles*, 502 U.S. at 11-12). "The Supreme Court has established a two-prong test to determine whether an act is 'judicial.'" *Barrett v. Harrington* 130 F.3d 246, 255 (6th Cir.1997) (cited with approval in *Huminski*, 396 F.3d at 75). First, the Court must consider whether the function is "normally performed by a judge." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). Second, the court must assess whether the parties dealt with the judge in his judicial capacity. *See id.*

In this case, all of the allegedly unconstitutional actions were undertaken by Defendant in the course of presiding over the state-court action against Plaintiffs. All of these actions were taken in the course of performing functions normally performed by a judge: scheduling court appearances, conducting pre-trial conferences, rendering evidentiary rulings, selecting jurors, presiding over trial and deciding motions. Morever, at all times relevant to this action, Plaintiffs were dealing with Defendant in his capacity as the judge presiding over the state-court action, and Defendant was acting within his jurisdiction as a Justice of the Supreme Court of the State of New York. Accordingly, the doctrine of judicial immunity applies to this action.

*Injunctive Relief*

Plaintiffs attempt to avoid application of the doctrine of judicial immunity by seeking only declaratory, injunctive, and other, unspecified "equitable" relief. The judicially created doctrine of judicial immunity does not bar a claim for prospective declaratory or injunctive relief against a judicial officer acting in his judicial capacity. *Pulliam v. Allen*, 466 U.S. 522, 542-43 (1984). However, in 1996, Congress effectively abrogated *Pulliam* by enacting the Federal Courts Improvement Act of 1996 ("FCIA"), Pub. L. No. 104-317, 110 Stat. 3847 (1996), which amended 42 U.S.C. § 1983 to provide that in "any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."

The Complaint in the case does not allege that a declaratory decree was ever entered or allege facts suggesting that declaratory relief was unavailable. "Declaratory relief against a judge for actions taken within his or her judicial capacity is ordinarily available by appealing the judge's order." *LeDuc v. Tilley*, No. 3:05CV157MRK, 2005 WL 1475334, at *7 (D. Conn. June 22, 2005) (citing cases). While Plaintiffs, who have appealed from the judgment entered against them in state court, may not have succeeded in obtaining declaratory relief, Plaintiffs have not alleged facts to suggest that such relief was unavailable.

In addition, this Court notes that the declaratory relief which Plaintiffs seek in this case is not *prospective* in nature. "[C]laims for judgment declaring that [a defendant's] past conduct violated federal law are retroactive in nature and, thus, are barred by the doctrine of absolute immunity." *B.D.S. v. Southold Union Free School Dist.*, Nos. CV–08–1319 (SJF)(WDW), CV–08–1864 (SJF)(WDW), 2009 WL 1875942, at *20 (E.D.N.Y. June 24, 2009) (citing

13

*Boyland v. Wing*, 487 F. Supp. 2d 161, 180 (E.D.N.Y.2007)). Moreover, "[t]he Eleventh Amendment and the principles governing the issuance of declaratory judgments prohibit the award of a declaration that state officials' prior conduct violated federal law." *Rothenberg v. Stone*, 234 F. Supp. 2d 217, 222 (E.D.N.Y. 2002) (citing *Green v. Mansour*, 474 U.S. 64, 65-66 (1985)). Accordingly, this Court cannot grant Plaintiffs' requests for declaratory or injunctive relief.[2]

## *Rooker-Feldman*

This Court is also precluded from granting Plaintiffs' request that this Court "completely reverse[]" Defendant's rulings by operation of the *Rooker-Feldman* doctrine. This "limited doctrine [is] aimed at cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review of those judgments." *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010) (internal quotations and citations omitted). Specifically, the doctrine "directs federal courts to abstain from considering claims when four requirements are met: (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *Id.*

In this case, all four of these requirements have been met. Plaintiffs, who lost in state court, complain of injuries suffered as a result of that loss and seek reversal of a state-court

---

[2]To the extent that Plaintiffs are seeking some other form of "equitable relief," such relief is not available where plaintiffs have an adequate remedy at law. *See, e.g., Brown v. Sandimo Materials*, 250 F.3d 120, 127 (2d Cir. 2001) ("before equitable relief will be granted, plaintiffs must show that they have no adequate remedy at law."). Since Plaintiffs can – and have – appealed Defendant's rulings in the state-court action, Plaintiffs have an adequate remedy at law.

judgment which was entered before this action was commenced. Accordingly, the *Rooker-Feldman* doctrine precludes this Court from considering Plaintiffs' request that it "completely reverse[]" Defendant's rulings, decisions, and orders.

### *Impeachment*

This Court also lacks the power to "impeach" or otherwise discipline state-court judges. Under New York's Judiciary Law, the power to "receive, initiate, investigate and hear complaints with respect to the conduct, qualifications, fitness to perform, or performance of official duties of any [New York State] judge" and to "determine that a judge be admonished, censured or removed from office" rests with the New York State Commission on Judicial Conduct. N.Y. Judiciary Law §44(1). Accordingly, to the extent Plaintiffs believe that Defendant's actions violated ethical rules, they must pursue their remedies through the State Commission on Judicial Conduct, not through litigation before this Court.

### *Failure to State a Civil Rights Claim*

Finally, this Court agrees with Defendant that the facts alleged in the Complaint do not state a claim under 42 U.S.C. §1983 or §1985. First, in order to state a claim under §1983, Plaintiffs must allege facts showing that Defendant's conduct deprived them of "rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). The actions allegedly committed by Defendant in the state-court, civil action involving Plaintiffs do not rise to the level of Constitutional violations. Moreover, while the Complaint alleges violations of state statutes and ethics rules, it does not allege or suggest the violation of any federal statutes.

To state a cause of action under 42 U.S.C. §1985, Plaintiffs must allege "(1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). Plaintiffs must also allege that the conspiracy was motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus." *Id.* (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993). A complaint containing "only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights" must be dismissed. *Gyadu v. Hartford Ins. Co.*, 197 F.3d 590, 591 (2d Cir. 1999)(quoting *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983)).

In this case, the Complaint does not allege that Defendant's actions were motivated by racial or class-based, invidious discriminatory animus. Moreover, the allegations are conclusory and vague. Accordingly, the Complaint does not state a claim under 42 U.S.C. §1985.

## *CONCLUSION*

For the reasons set forth above, Defendant's motion to dismiss is granted and this action is dismissed. The Clerk of Court shall enter judgment in favor of Defendant and against Plaintiffs and, upon entry of judgment, shall close this case.

**SO ORDERED.**

/S/

/ SANDRA L. TOWNES
United States District Judge

Dated: March 26, 2012
Brooklyn, New York